IN THE COURT OF
CRIMINAL APPEALS

                                           OF
TEXAS

 

                                                                              

                                                               NO.
PD-0446-06



 

 

                                            SHARAN ANN WILLIAMS, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                   ON APPELLANT=S
PETITION FOR DISCRETIONARY REVIEW

                                     FROM
THE SECOND COURT OF APPEALS

                                                           WICHITA  COUNTY



 

Keller,
P.J., filed a dissenting opinion in which Meyers,
J., joined.

 

 








This
case is not about a family camping trip gone wrong.  It=s not about a poor family doing the best it
could with the little they had.  This case is about two little girls who died a
horrible death because their mother, for no good reason, took them from a safe
home and left them in a place that she knew was a fire hazard.  She left them
there with a lit candle, telling them she was going to the store to get them
snacks and that she would be back, but she didn=t
come back.  The jury had no trouble deciding that appellant=s behavior on the night of
October 4, 2002, was criminal.  After three days of trial, it took them just an
hour and a half to come to that conclusion, which the Court today undoes. 

There
are two aspects of this case that I believe the Court overlooks.  First, for an
act to be reckless, the risk that it creates must be unjustifiable.[1] 
What differentiates this case from the scenarios posited by the Court is that
here, leaving the children with a lit candle was B
for so many reasons B
unjustifiable.  Appellant could have left the girls at the home where they
lived with their grandmother.  She could have left them with their father, who
had come by the house expecting to pick them up for the weekend.  There was no
pressing need to move them to a dangerous house.[2] 
But even if one were to conclude that appellant=s
wish to be with her children at her boyfriend=s
house justified taking them there, there was no need to light the candle. 
There was normally enough light in the bedroom from the streetlight in the
alley.  And finally, of course, there was no justification for failing to blow
out the candle.  Appellant=s
mother testified that appellant probably would have put out the candle if she
had been there.  This, again, is evidence of recklessness in that it shows
appellant knew it was important to blow out the candle, yet failed to do so. 
Instead of returning from the store with chips and Little Debbies, as she had
told her boyfriend and her children she would,[3] 
she stayed out for hours, not returning until she heard that the girls had
died, the snacks discarded in the van where she was when she heard the news.[4]








The
fact that appellant failed to return when she said she would is the second
aspect of the case that the Court=s
analysis seems to overlook.  Bowden assumed responsibility for the girls while
appellant went to the store, but he expected her back hours before the fire.[5] 
The Court states that Athere
is nothing to suggest that . . . appellant, had she been there, would have
prevented this tragedy.@[6] 
But there is evidence in the record that directly suggests it.  Appellant had
told her mother she always made sure the candles were out when she went to
sleep.  Her mother testified that she believed appellant, if she had been
there, probably would have put out the candle. Had she returned and blown out
the candle, the fire would not have happened.  Had she returned and failed to
blow out the candle, no one would be arguing that she was not responsible. 
Either way, she is responsible for the fire because she failed to return when
she said she would.








Moreover,
the Court discounts the evidence that appellant knew the risk because people
sometimes disregard a mother=s
advice.[7]  But the jury
wasn=t bound to
believe that appellant did so.  There was plenty of evidence from which the
jury could conclude that appellant knew that it was risky to take the girls to
Bowden=s house to
spend the night.  First, appellant=s
mother had told her that it was dangerous precisely because of the fire
hazard.  Appellant did hear this warning B
she later told police that she should have brought them home, Alike mama said.@  Second, when appellant
happened upon the girls=
father that night, she told him the girls were Aat
grandma=s,@ which was untrue.[8] 
It is in no way unreasonable for the jury to take all this as evidence that
appellant was aware of the risk of fire and, because of this awareness, thought
she needed to hide the truth about where the girls were from their father.  No
other explanation for the lie presents itself from the record. 

In
my opinion, these two aspects of the case B
the unjustifiability of the risk and the failure to return B are sufficient to rebut
the Court=s conclusion. 
But I also believe it is important to address at least some of the other
statements in the Court=s
opinion with which I disagree most strongly.  

First,
the Court suggests that Athe
acts that the State has alleged do not constitute a criminal offense under the
totality of the circumstances.@[9] 
I disagree; I think that the indictment did allege a criminal offense.  Second,
the Court seems to read Arecklessness@ to encompass only Aconscious indifference,@[10]
but the statutory definition of recklessness B
Aconsciously
disregard[ing] a substantial and unjustifiable risk that . . . the result will
occur . . . . [and such] risk . . . be[ing] of such a nature and degree that
its disregard constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances@[11]
B seems to be somewhat
broader than the Court=s
reading.








Third,
I cannot agree with some of the Court=s
comments regarding the likelihood of dying in fires or the reasonableness of
certain types of conduct around fire.  I think the Court goes too far in
saying, AStaying in a
structure without utilities does not increase the likelihood of dying in a
fire.@[12] 
I do not believe that the statistics cited by the Court support this
conclusion.[13]  The Court=s statement that taking
children to a house without utilities Acannot,
either by itself or in combination with other acts, support a finding of
criminal recklessness under these circumstances@[14]
is too expansive.

            I
also cannot agree with a number of the Court=s
statements regarding Aforeseeability.@[15] 
AForeseeability@ is not expressly a part of
Texas=s criminal law
of causation, and I see no need at this time to import it as an aid in
determining Abut-for@ causality.  Even if we
were to consider foreseeability, I disagree with several of the Court=s statements.  I do not
agree that Bowden=s
moving the candle was unforeseeable, especially since appellant had left it on
the bed where the girls slept.  I also cannot agree that one could not foresee
the possibility that clothing or a sheet would fall on the burning candle or
that Bowden would not be able to get the children out of the house if a fire
started.  Both of those events were eminently foreseeable.  Even Bowden=s falling asleep without
blowing out the candle was not completely unforeseeable, especially since appellant
failed to return when she said she would.








I
would also caution against relying upon socioeconomic studies in formulating
rules of law.  As an appellate court, our task is to construe statutes in
accordance with the legislative intent, not to implement our own notions of
what constitutes good policy.[16]

The
court of appeals carefully examined the evidence, applied the appropriate
standard for reviewing sufficiency of the evidence, and gave proper deference
to the jury=s implied
credibility decisions.  I agree with that court=s
reasoning and its conclusion, and I respectfully dissent to the reversal of
appellant=s
conviction.

 

Filed: October 3, 2007

Publish      









[1] 
Tex. Penal Code ' 6.03(c).





[2] 
Bowden had lived there for less than two weeks, so there was no long history of
safe visits.





[3] 
This was according to appellant=s
own statement.  The Court seems to place more weight on the evidence that
appellant told Bowden she was going out to see friends, but the jury was
entitled to instead believe appellant=s
account of what she said.





[4] 
Appellant was a prostitute.





[5] 
While it seems clear that Bowden loved the girls and was distraught at their
deaths, I disagree with the Court=s
implication that the record shows that he was a reliable and responsible
person.  I find virtually no testimony regarding his actions in the days and
years before the fire to suggest either that conclusion or the contrary.  The
lack of such evidence should be held against appellant B not in her favor.                                 





[6] 
Court=s op. at 36.





[7] 
Id. at 25.





[8] 
One witness testified that appellant said the girls were at Ahome@ but another testified specifically that
appellant said they were Aat
grandma=s@ house.  The jury was
entitled to believe that appellant used the words Aat grandma=s.@





[9] 
Id. at 11.





[10] 
Id. at 13 (referring to Adevil
may care@ or Anot giving a damn@ attitude).





[11] 
Tex. Pen. Code '6.03(c).





[12] 
Id. at 23.





[13] 
For instance, most homes have utilities, so it=s
not particularly significant that only fifteen percent of home fires were
attributable to open fires. The cited statistics do not address what proportion
of homes without utilities have open fires or whether homes with utilities are
less likely to have fires than homes without.  Besides, a house without
utilities presents its own additional problems, not found in the camping
scenario or in a house with utilities.  The children in this case were in a
room with only one usable exit, which was blocked by the fire.  The absence of
running water can affect the ability to put out a fire.  Electricity might have
been used to run a smoke or carbon monoxide detector. 





[14] 
Id. at 24.





[15] 
See id. at 33-34.





[16]  
The Court relies upon the Collins study for the proposition that A>parents in blue collar professions and parents
who were unemployed were four times more likely to be prosecuted than parents
from wealthier socioeconomic groups=
for fatal accidents involving children.@ 
See Court=s op.
at 41 n.81.  Collins=s
study involved a subset of children who died from fatal accidents: those
Awho died of
hyperthermia as a result of being left unattended in an automobile.@  And factors related to
the nature of the crime were strongly correlated to the decision to prosecute: Aprosecutions were initiated
in every case where the responsible party left the child in the car
deliberately@ in
contrast to cases in which the person forgot the child was in the car and A[p]rosecutions were
initiated in virtually every case where any sort of aggravating factor was
present,@ such as drug
or alcohol use.  Collins acknowledged that the socioeconomic disparity could
result from a correlation between socioeconomic status and these other factors,
but after conducting a multiple regression analysis, she determined that Asocioeconomic status was an
independently significant factor in prosecutorial decisionmaking.@ She did not, however,
reveal the residual amount of disparity, other than to say that it was Astatistically significant
in terms of patterns of prosecutorial decisionmaking at more than a ninety‑nine
percent confidence level.@ 
The question remains whether that residual disparity is due to the overly
aggressive prosecution of parents of lower socioeconomic status or due to the
overly lenient treatment of more affluent parents.  Collins=s primary argument is Athat prosecutors are in
fact employing a >suffering
discount= for parents@ and that the authorities
should be more willing to charge parents when children are harmed by a
parent=s grossly
negligent or reckless conduct.  See Jennifer Collins, Crime and
Parenthood: The Uneasy Case for Prosecuting Negligent Parents, 100 Nw. U. L. Rev. 807, 809, 820, 828-830,
832, 853, 854-55 (2006).